524 So.2d 1297 (1988)
STATE of Louisiana, Plaintiff-Appellee,
v.
Chester BENNETT, Sr., Defendant-Appellant.
No. CR87-983, CR87-984.
Court of Appeal of Louisiana, Third Circuit.
March 2, 1988.
*1299 Wm. N. Knight, Steve Gunnell, Cassidy & Gunnell, Jennings, for defendant-appellant.
Wendell Miller, Dist. Atty., Jennings, for plaintiff-appellee.
Before FORET and DOUCET, JJ., and SWIFT[*], J. Pro Tem.
DOUCET, Judge.
Defendant, Chester Bennett Sr., was charged by bill of information with driving while intoxicated, third offense, in violation of La.R.S. 14:98. Following a guilty verdict rendered by a jury of six, defendant was sentenced as a habitual offender to serve 10 years at hard labor. Defendant's appeal from his conviction and his appeal from his sentencing as a habitual offender have been consolidated. The salient facts of this case will be set forth in addressing defendant's first assignment of error.
*1300 ASSIGNMENT OF ERROR NO. 1:
Defendant contends there is insufficient evidence in the record to sustain his conviction of driving while intoxicated, third offense. The standard for reviewing sufficiency questions was set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and is "... whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." See also State v. Honeycutt, 438 So.2d 1303 (La.App. 3rd Cir.1983), writ denied, 443 So.2d 585 (La. 1983).
La.R.S. art. 14:98(A) provides:
"The crime of operating a vehicle while intoxicated is the operating of any motor vehicle, aircraft, watercraft, vessel, or other means of conveyance when:
* * * * * *
(2) The operator's blood alcohol concentration is 0.10 percent or more by weight based on grams of alcohol per one hundred cubic centimeters of blood;..."
This court in City of Alexandria v. Webster, 490 So.2d 747 (La.App. 3rd Cir.1986) stated, "To convict an accused of driving while intoxicated, the prosecution must prove that: (1) defendant was operating a vehicle or other conveyance; and (2) defendant was under the influence of alcoholic beverages or some type of drug."
On September 13, 1986, Officer Broussard, a patrolman with the Welsh Police Department, was on patrol when he observed defendant operating a vehicle which was weaving and swerving about the road. Officer Broussard first observed the vehicle being operated by defendant on South Adams Street and he followed it as it turned left onto East Highway 90, or East Russell Street. Prior to stopping the vehicle driven by defendant, Officer Broussard observed it cross the center line, cross the right-hand side line and finally almost hit a bridge. When Officer Broussard stopped the vehicle, defendant exited from the driver's side of the vehicle.
A Uniform DWI Arrest Report was prepared by Officer Broussard based on responses he received from defendant. Officer Broussard questioned defendant as to whether he was operating the vehicle and based on defendant's affirmative answer the DWI arrest report reflects that defendant was operating the vehicle. Officer Dugas of the Welsh City Police accompanied Officer Broussard on patrol on September 13, 1986, and testified he observed defendant operating the vehicle.
The second element of the crime is being under the influence of alcohol or drugs at the time of operating the vehicle. "... intoxication, with its attendant behavioral manifestations, is an observable condition about which a witness may testify." City of Alexandria v. Webster, supra. Upon Officer Broussard's request, defendant exited the vehicle and made his way to the back of his vehicle where the officer was standing. Defendant staggered as he attempted to walk and held onto the side of his car for assistance in walking. As defendant approached the officers, they detected a strong odor of alcohol on defendant's breath. While talking with Officer Broussard, defendant had difficulty with maintaining his balance. Officers Broussard and Dugas both observed that defendant's speech was slurred and that he was having difficulty speaking. Defendant admitted to having consumed three beers at Little Alec's.
Because Officer Broussard's observations regarding defendant led him to believe defendant was intoxicated, the officer required defendant to perform the finger to nose test. This test requires a person to stand with feet together, arms outstretched, head back, eyes closed and touch his nose with the index finger on each hand. When performing the test with both his right and left hands, defendant missed his nose and hit his chin, therefore, he is considered to have failed that sobriety test. A second field sobriety test is referred to as the coin test and it requires the person to lift his left leg up and pick up a coin from the ground with his right hand. Although Officer Broussard requested defendant perform the coin test, the defendant did not *1301 perform the test and admitted he was unable to perform that test.
Officer Michael Conner was called to testify regarding the results of defendant's breath intoxilizer test which he administered following defendant's arrest. According to the test, defendant's blood alcohol concentration was .30 percent which is well above the .10 percent mark of La.R.S. 14:98.
The above testimony indicates any rational trier of fact could have found defendant guilty of driving while intoxicated. There are several cases in Louisiana jurisprudence with similar facts and the convictions in these cases were affirmed despite contentions of insufficient evidence. The defendant in State v. Landry, 463 So.2d 761 (La.App. 5th Cir.1985); writ denied, 464 So.2d 1373 (La.1985), refused to submit to a field sobriety test, however, the officer observed that defendant was staggering, leaning on his car for support, having difficulty speaking and smelled of alcohol. Although defendant refused to submit to a field sobriety test, the court sustained the conviction because the officer's observations were sufficient to support the driving while intoxicated conviction.
The defendant in State v. Legnon, 464 So.2d 910 (La.App. 4th Cir.1985), did agree to the administering of two field sobriety tests and failed both tests as he was unable to touch his nose with his index finger and had difficulty retrieving keys from the ground. Defendant's failure of the two field sobriety tests coupled with the officer's observations regarding "... defendant's slurred speech, wavering stance, and the distinct odor of alcohol on his breath provided evidence by which any rational trier of fact could have found this defendant guilty beyond a reasonable doubt of the crime of driving while intoxicated." State v. Legnon, supra.
The police officer's testimony in State v. Sennette, 462 So.2d 675 (La.App. 4th Cir. 1984), regarding the smell of alcohol on defendant's breath, the slurring of defendant's speech, defendant's inability to maintain his balance, and defendant's fumbling and stumbling during field sobriety tests was sufficient to support the driving while intoxicated conviction. The second circuit affirmed the defendant's conviction in State v. Walker, 451 So.2d 679 (La.App. 2nd Cir.1984), writ denied, 456 So.2d 1016 (La.1984), based on a police officer's testimony that defendant's breath smelled of alcohol, defendant was swaying and unsteady and the fact that defendant had "... difficulty balancing himself, touching his nose, and walking heel to toe ..." during a field sobriety test.
The above discussed cases support the conclusion that there is sufficient evidence to support defendant's conviction of driving while intoxicated, third offense. Therefore, this assignment of error lacks merit.
ASSIGNMENT OF ERROR NO. 2
By this assignment of error defendant contends the sentence imposed is excessive. In this area of the law there are several well established principles. In State v. King, 471 So.2d 1181 (La.App. 3rd Cir.1985), this court stated, "For a sentence to be excessive, the penalty must be so disproportionate to the crime committed, in light of the harm caused to society, as to shock our sense of justice." In reviewing excessive sentence claims, an appellate court must be mindful of the fact that wide discretion is granted to trial judges in the imposition of sentences within statutory limits and a sentence will not be set aside as excessive absent a manifest abuse of the discretion. State v. Meshell, 473 So.2d 935 (La.App. 3rd Cir.1985). La.C.Cr.P. art. 894.1 requires the trial judge to state on the record his reasons for the sentence and those reasons aid the appellate court when reviewing an excessive sentence claim. State v. Bourgeois, 406 So.2d 550 (La. 1981). The final principle requiring mention is that "... maximum sentences are appropriate only in cases involving the most serious violation of the relevant statute and the worse type of offender." State v. Goodman, 427 So.2d 529 (La.App. 3rd Cir.1983).
In addition to being convicted on the driving while intoxicated third offense charge, defendant was found guilty as an habitual offender. According to La.R.S. *1302 15:529.1(A)(1) and La.R.S. 14:98, defendant faced a maximum sentence of ten years, with or without hard labor. After detailing his reasons, the trial judge sentenced defendant to serve ten years at hard labor.
For the reasons discussed below, it cannot be said the trial judge in the instant case manifestly abused his discretion nor is defendant's penalty "... so disproportionate to the crime committed, in light of the harm caused to society, as to shock our sense of justice." State v. King, supra. While the imposition of a prison sentence may cause defendant's wife and minor child residing in the household to suffer a hardship, there are numerous factors militating towards imprisonment. The first factor weighing toward imprisonment is that defendant's conduct did threaten serious harm. Fortunately, no one was injured as a result of defendant's operation of the vehicle while he was in an intoxicated state, however, the possibility of injury was definitely present.
Another factor weighing in favor of imprisonment is that defendant should have contemplated that his conduct could have resulted in serious harm to others. As the trial judge properly noted, there is an undue risk that defendant will commit another crime as this is the sixth time since 1955 that defendant has been arrested for driving while intoxicated. Last but not least, defendant's criminal record supports the imposition of not just imprisonment but the imposition of the maximum term allowed by law. The pre-sentence investigation report details defendant's criminal record dating back to 1955. Since 1955 defendant has been charged with a variety of crimes including several DWI's, vagrancy, simple burglary, theft, criminal mischief, murder reduced to manslaughter, and driving under revocation.
The record clearly supports the imposition of the maximum sentence of imprisonment provided by La.R.S. 14:98(D)five years at hard labor. However, for the reasons later discussed in addressing defendant's assignment of error regarding his sentencing as a habitual offender, we will vacate the sentence as a whole and remand this case to the trial court for re-sentencing.
ASSIGNMENT OF ERROR NO. 3:
Assignment of Error No. 3 was not briefed, therefore, it is considered abandoned. State v. Dewey, 408 So.2d 1255 (La.1982); State v. Johnson, 438 So.2d 1295 (La.App. 3rd Cir.1983).
ASSIGNMENT OF ERROR NO. 4:
Only one issue under Assignment of Error No. 4 was briefed, therefore, the remaining two issues are considered abandoned. State v. Dewey, supra; State v. Johnson, supra. In the issue briefed defendant contends the trial judge erred in allowing the introduction of the results of the breath intoxilizer test as the state failed to comply with the notice requirement of La.R.S. 15:501(A). While the state did provide notice of its intention to introduce the results of the breath test to defendant on May 8, 1987, the notice was not provided ten days in advance of trial as required by the statute because the trial began on May 11, 1987.
While conceding the notice was not provided ten days in advance of trial, the state argues that La.R.S. 15:501 is inapplicable in the instant case because no attempt was made to introduce a criminalistics laboratory certificate. The state's argument is persuasive and supported by the jurisprudence. La.R.S. 15:499 authorizes certain persons and entities to make proof of examination and analysis of physical evidence by the issuance of certificates. Admissibility of such certificates is governed by La.R.S. 15:500, while La.R.S. 15:501 requires notice of the intent to introduce a certificate. La.R.S. 15:501(A) provides:
"The party seeking to introduce a certificate made in accordance with R.S. 15:499 shall, not less than ten days prior to the commencement of the trial, give written notice of intent to offer proof by certificate. Such notice shall include a copy of the certificate."
Clearly the notice required by La.R.S. 15:501(A) only applied when the certificate will be offered into evidence. The state in *1303 the instant case called the police officer who administered defendant's breath intoxilizer test to testify to the results of that test. Officer Michael Conner testified defendant's blood alcohol concentration was .30 percent according to the reading obtained after defendant took the test. While a certificate attesting to that result may have been available, no such certificate was offered into evidence.
When faced with this very issue in State v. King, supra, this court stated, "The requirement of R.S. 15:501 to give notice is operative only when the certificate is used in lieu of the testimony of the preparer of the lab certificate." Given the wording of La.R.S. 15:501 and State v. King, supra, it was not error for the trial judge to admit the results of the breath intoxilizer test even though notice was not properly given. Therefore, this assignment of error lacks merit.

HABITUAL OFFENDER
By his last assignment of error defendant contends there was insufficient evidence to find him a habitual offender under the provisions of La.R.S. 15:529.1. Under La.R.S. 15:529.1, "Any person who, after having been convicted within this state of a felony ... thereafter commits any subsequent felony within this state, ..." is considered a habitual offender and may be sentenced under the provisions of that statute.
In State v. Lee, 364 So.2d 1024 (La.1978), an insufficiency of the evidence claim was rejected where "... defendant's prior convictions were established by the certified copies of the bills of information, minutes of court and jury verdicts reflecting defendant's convictions and sentences for the crimes charged."
In the instant case copies of a 1978 bill of information and minutes of court were offered to prove defendant's prior felony conviction. Count one of that bill of information charged the defendant with a third offense driving "while under the influence of intoxicating beverages", and lists the two previous convictions. Count two of the same information charged defendant with operating a motor vehicle in violation of a court order, a violation of La.R.S. 32:1480. A true copy of the minutes of the Thirty-first Judicial District Court for May 23, 1978 reflect that the defendant appeared in court, withdrew previously entered not guilty pleas, and entered a plea of guilty to each offense. The minutes list the first offense as "Ct. 1. Driving While Intoxicated." On appeal defendant now argues that the minutes do not establish that the predicate offense was a felony. We find this argument to be without merit.
The minutes obviously reflect guilty pleas to the charges contained in the bill of information which specifically list one of the offenses charged as driving while intoxicated, third offense. The minutes show that the defendant was sentenced to serve five years at hard labor on the driving while intoxicated offense. Under La.R.S. 14:98(D), five years at hard labor is the maximum sentence of imprisonment for a third offense DWI. The maximum sentence of imprisonment for each of the two misdemeanor DWI offenses, under La.R.S. 14:98(B), first offense, and La.R.S. 14:98(C), second offense, is six months. Neither La. R.S. 14:98(B) or (C) provide for imprisonment at hard labor.
At the May 23, 1978 court proceeding the defendant was also sentenced to serve five years at hard labor for driving in violation of a court order. Both sentences were to run consecutively. This was an illegal sentence since the statute violated, La.R.S. 32:1480, only provides for five years imprisonment. Subsequently, on March 25, 1980, both of defendant's prior sentences were vacated and he was re-sentenced to five years at hard labor with credit for time served on the third offense DWI and five years in the parish jail for driving in violation of a court order, with one year credit for time served. Again, both sentences were to run consecutively.
At the habitual offender hearing in the case at bar, Logan Nichols, an Assistant District Attorney, testified that he was present at the March 25, 1980 hearing. He identified the defendant present in court as *1304 the same Chester Bennett, Sr. who pled guilty on that date to driving while intoxicated and was sentenced to serve five years at hard labor. In view of the above evidence we find that the state established that the defendant in the case at bar was convicted of a felony, a third offense DWI, on March 25, 1980 and also, for a third offense DWI on May 13, 1987 and was thus a habitual offender.
Under this same assignment of error, defendant next contends there was insufficient evidence to find him a habitual offender because the state failed to show the date of discharge of defendant on the previous felony conviction. La.R.S. 15:529.1(C) provides:
"This section shall not be applicable in cases where more than five years have elapsed since the expiration of the maximum sentence, or sentences, of the previous conviction, or convictions, and the time of the commission of the last felony for which he has been convicted. In computing the period of time as provided herein, any period of servitude by a person in a penal institution, within or without the state, shall not be included in the computation of any of said five year periods."
The five-year period provided by this section begins to run from the date the felon is actually discharged from state custody and supervision rather than the theoretical date on which the sentence imposed would have ended absent diminution of sentence for good behavior, commutation of sentence, or pardon. State ex rel. Wilson v. Maggio, 422 So.2d 1121 (La.1982); State v. Martin, 400 So.2d 1063 (La.1981); State v. Vincent, 387 So.2d 1097 (La.1980); State v. Anderson, 349 So.2d 311 (La.1977); State v. Jefferson, 511 So.2d 794 (La.App. 4th Cir.1987); State v. Killion, 483 So.2d 1281 (La.App. 4th Cir.1986), writ denied, 492 So.2d 1215 (La.1986).
La.R.S. 15:529.1(F) states:
"The certificates of the warden or other chief officer of any state prison, or of the superintendent or other chief officer of any penitentiary of this state or any other state of the United States, or of any foreign country, or of any chief officer of any parish or county jail in this state or any other state of the United States, or of the clerk of court of the place of conviction in the state of Louisiana, under the seal of his office, if he has a seal, containing the name of the person imprisoned, the photograph, and the fingerprints of the person as they appear in the records of his office, a statement of the court in which a conviction was had, the date and time of sentence, length of time imprisoned, and date of discharge from prison or penitentiary, shall be prima facie evidence of the imprisonment and of the discharge of the person, either by a pardon or expiration of his sentence as the case may be under the conviction stated and set forth in the certificate."
This provision sets forth what we feel is a "nonexclusive" means of establishing the date of discharge. That is, evidence other than a warden's certificate may be sufficient to establish the date of discharge. Just as the burden is on the state to establish the prior felony conviction(s), it must also establish that the five-year period has not elapsed. If it has been five years or more since the date of discharge for the predicate felony offense, the state may still show that the five-year cleansing period was interrupted by "any period of servitude" by the defendant "in a penal institution, within or without the state." Thus, the five-year cleansing period may be interrupted by time served in a parish jail.
In the case at bar the state merely introduced the bills of information and minutes of court previously discussed. This evidence showed only that the defendant was convicted of the predicate felony offense, and, on March 25, 1980, was sentenced to serve, consecutively, five years at hard labor with credit for time served and five years in the parish jail with one year credit for time served. Nowhere in the record is there prima facie evidence of the date of discharge from state custody or supervision following completion of his sentence for the predicate felony offense. Nor is there any evidence of how long the defendant may have been in the parish jail on the misdemeanor conviction.
Under La.R.S. 15:571.3 the defendant was eligible for diminution of sentence for *1305 good behavior or "good time" for both sentences. Considering the computation of good time as set forth in La.R.S. 15.571.4 it is probable that the five-year cleansing period had not elapsed from the date of discharge for the predicate felony offense to the date of the commission of the most recent felony for which he was convicted and multiple billed. Besides the issue of good time, however, we must also consider the possibility that defendant's sentence was commuted or that he was pardoned. In the case at bar La.R.S. 15:529.1 is being employed to double the prescribed maximum sentence that the defendant could have received for the offense convicted of. In light of the inclusion of Section (C) in the habitual offender statute we feel the legislature intended that, at a minimum, the state must present prima facie evidence of the date of discharge through such means as presentation of a warden's certificate or evidence of equal weight. This was not done in the case at bar. Accordingly the sentence imposed under La.R.S. 15:529.1 cannot stand.
For the reasons assigned, we affirm the conviction of the defendant but vacate the sentence imposed on him. This case is remanded to the trial court for re-sentencing in light of the views expressed herein.
AFFIRMED IN PART, VACATED IN PART, REMANDED.
NOTES
[*] Judge G. WILLIAM SWIFT, JR., Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.