552 So.2d 669 (1989)
STATE of Louisiana, Appellee,
v.
Marvin Wayne YOUNG, Appellant.
No. 21113-KA.
Court of Appeal of Louisiana, Second Circuit.
November 1, 1989.
*670 Campbell, Campbell & Johnson by Mark O. Foster, Minden, for appellant.
William J. Guste, Jr., Atty. Gen., T.J. Adkins, Dist. Atty., Stephen K. Hearn, Jr. and John L. Sheehan, Asst. Dist. Attys., Ruston, for appellee.
Before SEXTON, NORRIS and HIGHTOWER, JJ.
NORRIS, Judge.
On December 14, 1987, defendant, Marvin Wayne Young, along with David Cordano and Erwin Mills, met Dep. Jim Morris, an undercover police officer, at the Cotton Patch Restaurant in Ruston, Louisiana. Dep. Greg Franklin had supplied Dep. Morris with fifteen $100 bills, with recorded serial numbers. Dep. Morris used this money to purchase a one-ounce packet of cocaine from Young. At the conclusion of this transaction, Young returned to his automobile, where Cordano and Mills were waiting, and began traveling west on the I-20 service road. Dep. Morris radioed Dep. Franklin that the transaction had been made and Franklin stopped the defendant's automobile as it approached the intersection of the exit ramp and Hwy. 167. All three of the occupants were arrested and subsequently charged with possession of cocaine with the intent to distribute in violation of LSA-R.S. 40:967 B. The fifteen $100 bills were found in the car. The car was towed to the Lincoln Parish Sheriff's office where a trained narcotics dog indicated that drugs were still in it. A search warrant was obtained and a subsequent search of the car uncovered another one-ounce packet of cocaine.
The packets of powder recovered during the undercover sale were turned over to Dep. Franklin. On December 16, 1987, Franklin took the packets to the North Louisiana Criminalistics Lab in West Monroe for analysis which revealed that they contained cocaine.
The charge was severed as to the multiple defendants and Young proceeded to a bench trial on July 15, 1988. At the trial, neither the State nor defendant subpoenaed the lab technician who analyzed the two packets of powder seized on the day of the arrest. The State sought to prove the packets contained cocaine by introducing *671 certified lab reports prepared by the Louisiana Criminalistics Lab in accordance with LSA-R.S. 15:499. Defendant objected to the admissibility of these lab reports, claiming he did not receive proper notice of the State's intent to introduce the certificates in accordance with R.S. 15:501. The trial court overruled the objection and the certificates were admitted into evidence. The lab reports certified that the substance in the packets was cocaine. The trial court found Young guilty as charged. After the trial, defendant filed a motion for post verdict judgment of acquittal, arguing that the State failed to give him proper notice of its intent to introduce the lab reports. The motion was denied.
Defendant appealed, originally urging seven assignments of error. However, assignments of error numbers 2, 4, and 6 are not briefed and are therefore deemed abandoned. State v. Domingue, 298 So.2d 723 (La.1974); State v. Williams, 338 So.2d 672 (La.1976). Finding no reversible error, we affirm.

ASSIGNMENT OF ERROR NO. 1
By this assignment Young argues that the trial court erred in admitting into evidence the certified lab reports.
The State may prove the contents of physical evidence through lab report certificates. Certified lab reports made in accordance with R.S. 15:499 may be introduced in lieu of live testimony following compliance with R.S. 15:499 through R.S. 15:501. R.S. 15:499 provides:
§ 499. Certificates of analysis
A. All criminalistics laboratories established by laws of this state or by laws of the United States, and all coroners, forensic pathologists, and other persons, partnerships, corporations, and other legal entities practicing in fields of knowledge and expertise in the gathering, examination, and analysis of evidence by scientific means are authorized to make proof of examination, and analysis of physical evidence by the certificate of the person in charge of the facility in which such examination and analysis is made. Such certificate shall list:
(1) The date and time such evidence was delivered to such facility.
(2) The name of the person making such delivery, and the person receiving same.
(3) A brief description of the evidence.
(4) The type of examination or analysis requested.
(5) The name of the person making the examination or analysis.
(6) The date or dates of the examination or analysis.
(7) The results of the examination or analysis.
B. The certificate shall give the name and address of the facility in which the examination or analysis was made, and shall be signed by the person making the examination or analysis and by the person in charge of the facility.
R.S. 15:500 provides:
§ 500. Admissibility
In all criminal cases and in all cases in juvenile or family courts which are of a criminal nature, and in civil forfeiture proceedings arising from criminal activity, the courts of this state shall receive as evidence any certificate made in accordance with R.S. 15:499 subject to the conditions contained in this Section and R.S. 15:501. The certificate shall be received in evidence as prima facie proof of the facts shown thereon, and as prima facie proof of proper custody of the physical evidence listed thereon from time of delivery of said evidence to the facility until its removal therefrom.
As required by R.S. 15:501 A, the party seeking to introduce the certificate must give the opposing party at least 10 days written notice of intent to "offer proof by certificate." The notice must include a copy of the certificate. The requirement of R.S. 15:501 to give notice is operative only when the certificate is used in lieu of the testimony of the preparer of the lab certificate. State v. King, 471 So.2d 1181 (La. App. 3d Cir.1985); State v. Bennett, 524 So.2d 1297 (La.App. 3d Cir.1988).
The record reveals that prior to trial on February 5, 1988, defendant filed a request for discovery and production of documents. *672 He specifically requested that the district attorney furnish him with any scientific facts in his possession that he intended to use at trial. R.p. 27. In its response to defendant's motion for discovery, the State in boldface type stated, "THE STATE WILL USE ALL MATTERS HEREIN DISCLOSED." Attached to this response to the motion for discovery were the certified lab reports prepared in accordance with R.S. 15:499-15:501. R.p.p. 53, 67, 68. One of the codefendants, Cordano, who did not seek discovery, received a form entitled "Notice of Intent to Introduce Certified Lab Reports."
Young admits that his lawyer received the response to his motion for discovery with the attachments. He claims, however, that this pleading with its attachments failed to properly notify him that the State intended to offer proof by certificates instead of by the lab technician's testimony. According to defendant, he was notified that the State would "use" but not "offer proof by" the certificates at trial. Defendant claims that the State's choice of wording was inadequate to put him on notice that the lab technician would not be available for cross-examination. He argues that as a result of this lack of notice he wrongly assumed the State would subpoena the lab technician as a witness; he claims the lack of notice deprived him of his constitutional right to confront and cross-examine the lab technician.
There is no prescribed formality for notice under R.S. 15:501 except that it be written and sufficient to permit defendant to adequately present his defense and to avoid surprise at trial. See State v. Sims, 426 So.2d 148 (La.1983); State v. Johnson, 513 So.2d 832 (La.App. 2d Cir. 1987), writ denied 519 So.2d 124 (La.1987). The response to the motion for discovery clearly stated, "THE STATE WILL USE ALL MATTERS HEREIN DISCLOSED" and included copies of the certified lab reports as attachments. This was adequate and timely written notice that the State intended to offer proof of the results of the tests by the lab report certificates rather than by testimony. It allowed Young to adequately present his defense and avoid being surprised. The defendant's remedy, if he desired cross-examination, was to timely subpoena the technician who performed the analysis. He did not do so. The notice was timely and sufficient. This argument does not present reversible error.

ASSIGNMENTS OF ERROR NOS. 3 AND 5
By these assignments Young argues that the trial court erred in overruling his objection to the State's allegedly leading question of Dep. Franklin and in allowing Dep. Franklin to refer to the lab reports to refresh his memory.
The State sought to establish proper chain of custody of the physical evidence by asking Dep. Franklin if he delivered the packages of suspected cocaine to the crime lab. Franklin initially responded that either he or Officer Porter took the evidence to the crime lab but that he "would have to look at the lab report" in order to refresh his memory. After reviewing the report, Franklin testified that he remembered delivering the evidence to the lab.
Young contends that the trial court erred in overruling his objection that the State was leading Dep. Franklin by showing him the lab reports in an effort to refresh his memory.
We do not believe that tendering a lab report to a witness to enable him to refresh his memory qualifies as a leading question. However, the allowance of a leading question is largely within the discretion of the trial court and only a clear abuse of this discretion which prejudices a defendant's rights will justify a reversal of a conviction. State v. Jones, 439 So.2d 598 (La.App. 1st Cir.1983). LSA-C.E. art. 611 C permits a party to lead a witness on direct examination when "necessary to develop his testimony." This provision is broad enough to include allowing a witness to refer to a writing to refresh his memory. The trial court did not abuse its discretion in overruling the objection.
Defendant also argues that the trial court erred in allowing Franklin to refer to the crime lab report to refresh his memory because it was not prepared by the officer, but by the lab personnel.
*673 In a criminal case, a witness may be allowed to refresh his memory while testifying by use of any writing regardless of who prepared it, provided that after such inspection, the witness can testify to the fact. It is not the writing that is the evidence but the testimony of the witness. LSA-R.S. 15:279; LSA-C.E. art. 612 B; 3 Wigmore, Evidence § 759, at p. 128 (Chadbourn rev.1970). See also State v. Knapp, 378 So.2d 911 (La.1979); State v. Barnes, 257 La. 1017, 245 So.2d 159 (1970); State v. Abram, 465 So.2d 800 (La.App. 2d Cir. 1985), writ denied 469 So.2d 983 (La.1985). The trial court did not err by allowing Franklin to use the lab report to refresh his memory. Moreover, the lab report must list the name of the person who delivered the evidence to the lab. R.S. 15:499 A(2). The certificates, properly admitted, were surely competent to refresh the deputy's memory. This argument is without merit.

ERRORS PATENT
By his final assignment of error, defendant urges this court to consider all other errors patent on the face of the record. We have reviewed the record for errors patent and have found none. LSA-C.Cr.P. art. 920(2). Defendant's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.